IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES D. BLACK, | ) | CASE NO. 1:07CV0642 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE O'MALLEY |
| v. | ) | |
| | ) | MAGISTRATE JUDGE HEMANN |
| JULIUS WILSON, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).  James

D. Black ("Black") petitions this court for a writ of habeas corpus filed pursuant to 28 U.S.C.

§ 2254 on March 5, 2007.  Black is in the custody of the Ohio Department of Rehabilitation

and Correction pursuant to a journal entry of sentence in the case of *State of Ohio v. Black*,

Case No. 2005 CR 0780 (Richland County 2005).  For the reasons given below the

magistrate judge recommends that the petition be denied.

I

Before examining the facts of this case, the court notes that respondent's brief was

singularly unhelpful in weighing the merits of Black's petition.  Respondent confuses

exhaustion and procedural default, fails to raise the defense of procedural default against

all appropriate claims, cites reams of marginally relevant law while failing to cite law in

support of key propositions, and continues to ignore a federal court's mandate to grant

habeas relief for violations of state law when those violations are serious enough to infringe

on the right to due process.  The continuing deterioration in the quality of the state's briefs raises the possibility that a future habeas petitioner may win habeas relief simply because the state fails competently to oppose the petition.

On October 6, 2005 the September term of the Richland County grand jury indicted Rector on one count of theft in violation of Ohio Rev. Code § 2913.02(A)(1).  On July 20, 2006 Black withdrew his not guilty plea and pleaded guilty to theft as charged in the indictment.  Just above Black's signature on the Admission of Guilt/Judgment Entry form was the following:  "I understand my right to appeal a maximum sentence, my other limited appellate rights and that any appeal by me must be filed within 30 days of my sentence." Answer/Return of Writ ("Answer"; Docket #15), Exh. 4, p. 2.  On August 29, 2006 the court sentenced Black to 11 months' imprisonment, the sentence to be served consecutively to sentences from other counties, and to five years of post-release control.

Black moved in the trial court on October 6, 2006 to withdraw his guilty plea.  Black argued that he should be allowed to withdraw his plea because he did not receive the sentence he expected.  On October 20, 2006 Black moved in the trial court for a dismissal of the count of theft for failure to bring him to trial timely.  The court overruled both motions on March 9, 2007.[1]  Black alleges that he was never sent notice that the court had overruled these motions, and there is no indication on the docket that the court mailed copies of this order to Black.

Black filed on December 4, 2006 in the state appellate court a notice of appeal of

---

[1]  The date stamp on the order, Answer, Exh. 23, is illegible.  Although someone has written in ink over the illegible date "Mar 5," the docket indicates that the order was filed on March 9, 2007.  *See* Docket Search and Docket ("docket"), Answer, Exh. 2, p. 1.

his conviction and sentence.  Black alleged violations of his right to effective assistance of counsel and his right to a speedy trial.  The state moved to dismiss his appeal as untimely. In his opposition brief filed December 26, 2006 Black moved for leave to file a delayed appeal.[2]  On January 10, 2007 the state appellate court *sua sponte* dismissed Black's appeal as untimely.

On December 6, 2006 Black filed in the state appellate court a notice of appeal and a motion to file a delayed appeal pursuant to R. 5(A).  Black asserted in the brief in support of his motion that he had not previously sought leave to appeal.  He gave as reason for his failure to perfect an appeal as of right the failure of the trial court to inform him of his appellate rights, the failure of his counsel to bring this omission to the attention of the trial court and to inform him of his appellate rights, and his not receiving a copy of the journalized entry of sentence until October 9, 2006.  Black did not raise in his motion the assignments of error that he intended to raise via his delayed appeal.  The state appellate court denied Black's motion and dismissed his appeal for failing "to show sufficient cause for filing a delayed appeal . . . ."  Judgment Entry, January 10, 2007, Answer, Exh. 13, p. 2.[3]  Black moved on January 22, 2007 for reconsideration, asserting that the court ought to reconsider its decision because trial counsel had rendered ineffective assistance in

---

[2]  Ohio App. R. 5(A) ("R. 5(A)") provides that after the expiration of the 30 day period for filing an appeal of right, an appellant may file a motion for leave to appeal with the appellate court, setting forth, *inter alia*, the reasons for the failure of the appellant to perfect an appeal as of right.  Black did not include with his notice of appeal a motion for leave to appeal or the reasons for his failure to perfect an appeal as of right.  These were included for the first time in his motion for a delayed appeal (see *infra*) and in his opposition brief.

[3]  As already noted, the Admission of Guilt/Judgment Entry form included the notification that Black had 30 days to appeal his sentence.

failing to file a notice of appeal.  The appellate court denied this motion on February 9, 2007.

Black filed in the state appellate court on December 21, 2006 a petition for a writ of habeas corpus.  In his petition Black asserted that it was an abuse of discretion for the trial court to refuse to stay sentence and set bail pending an appeal.  The court denied Black's petition *sua sponte* on January 16, 2007.

On February 6, 2007 Black filed in the Ohio Supreme Court a notice of appeal of the appellate court's denial of his motion for a delayed appeal.  In his memorandum in support of jurisdiction Black asserted three propositions of law:

> PROPOSITION OF LAW NO. I:  TRIAL COURT AND APPELLATE ERRED IN NOT PROVIDING COUNSEL FOR APPELLANT'S APPEAL WHICH IS GUARANTEED UNDER THE SIXTH AND FOURTEENTH AMENDMENTS.
>
> PROPOSITION OF LAW NO. II:  TRIAL COUNSEL WAS INEFFECTIVE IN NOT FILING NOTICE OF APPEAL IN APPELLANT'S BEHALF, WHEN THERE WAS A MISCARRIAGE OF JUSTICE DONE IN APPELLANT'S CASE.
>
> PROPOSITION OF LAW NO. III:  APPELLATE COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR DELAYED APPEAL WHEN TRIAL COURT RECORDS WILL CLEARLY SUPPORT A MISCARRIAGE OF JUSTICE DONE IN APPELLANT'S CASE.

(Punctuation altered from the original).  On May 16, 2007 the Ohio Supreme Court declined jurisdiction and dismissed Black's appeal as not involving any substantial constitutional question.

On March 5, 2007 Black filed in this court a petition for a writ of habeas corpus. Black raises five grounds for relief, denominated as "assignments of error," in his petition:

> Assignment of error no. I:  Petitioner was denied Fourteenth Amendment right to appeal conviction and sentence.
>
> Assignment of error no. II:  Petitioner was denied effective assistance of counsel at

4

trial and appellate proceedings.

Assignment of error no. III:  Richland County prosecution breached negotiated plea agreement at petitioner's resentencing hearing.

Assignment of error no. IV:  Richland County prosecution induced petitioner's guilty plea with an unfulfillable promise or agreement.

Assignment of error no. V:  Petitioner's sentence violates the ex post facto and due process clause[s] of the United States Constitution.[4]

Respondent filed an Answer on July 19, 2007 (Docket #6).  Black filed a Traverse on August 3, 2007 (Docket # 8).  Thus, the petition is ready for decision.

II

A.    *Jurisdiction*

Writs of habeas corpus may be granted by a district court within its respective jurisdiction:

> Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) and (d).

Federal jurisdiction attaches on a petition for a writ of habeas corpus when an petitioner in custody files for the writ.  Jurisdiction is not defeated solely by the release of the petitioner before completion of proceedings on the application.  *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968).  When petitioner continues to suffer "collateral consequences"

---

[4]  The gravamen of this ground for relief is that the Ohio Supreme Court's refashioning of the state's sentencing laws in *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470 (2006), a case decided after Black's arrest, was retroactively and unconstitutionally applied to Black in sentencing him.

of an imposed sentence sufficient to give the petitioner "a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him," the cause is not moot.  *Id.* at 237 (quoting *Fiswick v. United States*, 329 U.S. 211, 222).

Collateral consequences are sufficient to avoid mootness when they are severe, immediate (i.e., not speculative), and not shared by the public generally.  *Hensley v. Municipal Court*, 411 U.S. 345, 351-52 (1973).  Collateral consequences sufficient to avoid mootness include restraints on liberty accompanying release on recognizance pending trial, *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 319-20 (1984), and civil disabilities resulting from a felony conviction, *Carafas* at 237.

Black was convicted in the court of common pleas in Richland County.  At the time he filed his writ of habeas corpus in the Northern District of Ohio, he was in prison pursuant to that conviction.  He is currently subject to community control sanctions imposed upon his release from imprisonment.  This court has jurisdiction over Black's petition.

B.    *Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary hearing in the instant case.  All of Black's claims involve legal issues which can be independently resolved without additional factual inquiry.

C.    *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. 28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v.*

6

*Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Respondent asserts that Black has failed to exhaust all of his grounds for relief, but argues that the court should return only claims three, four, and five to the state courts to exhaust state remedies and that the case should be stayed pending their exhaustion.  Respondent errs because respondent confuses exhaustion with procedural default.  The only question a habeas court must ask when determining whether the petitioner has exhausted his claims is whether the petitioner has any state remedies remaining for his claims.[5]  All but one of Black's grounds for relief, ground three, have been exhausted

---

[5] Distinctions between "exhaustion" and "procedural default" have been blurred by courts:

The problem in interpreting . . . many . . . federal habeas corpus cases is the ambiguous use of the words "exhaustion" and "exhausted."  Courts have attached two meanings to these words in habeas cases.  The generally accepted meaning

7

_____

of "exhaustion" and "exhausted" in habeas cases refers to a petitioner's presentation of federal claims to the state's highest court.  *See, e.g., Rose v. Lundy,* 455 U.S. at 515-16.  However, courts also have used those words to refer to the availability of state remedies when the federal court is considering whether to send a petitioner back to the state courts to present his federal claims.  *See Harris v. Reed,* 489 U.S. 255 (1989) (O'Connor, J., concurring) (sending habeas petitioners back to exhaust state remedies when remedies have expired creates game of "judicial ping pong").  When courts determine state remedies no longer are available, they often state that the petitioner's state remedies have been "exhausted."  *See Matias v. Oshiro,* 683 F.2d 318, 319-20 (9th Cir. 1982).

*Krum v. Thomas*, 774 F. Supp. 563, 565 (D. Az. 1991).  Confusion regarding these concepts was compounded as they evolved in the wake of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA").  The respective consequences for failure to exhaust and procedural default, however, make clear the distinction between the two terms as they are currently used.

The remedy for failure to exhaust is to return the petitioner to the state courts to make use of whatever state remedies remain to adjudicate his claims.  If a petitioner has no remaining remedies because the petitioner cannot comply with the relevant procedural rules or is barred by *res judicata*, it makes no sense to send the petitioner to the state courts in a futile effort to attempt remedies that state law prevents the petitioner from using.  In that case, the petitioner's remedies are exhausted, meaning that no state remedies are available.  *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996).

Procedural default occurs if the petitioner has failed *properly* to exhaust claims.  If no remedies remain to petitioner and the petitioner has failed properly to raise claims in the highest court in the state, the petitioner has defaulted those claims.  The result, absent a showing of cause and prejudice or a manifest miscarriage of justice, is the dismissal of the claims.  Together, the doctrines of exhaustion and procedural default ensure that most petitioners only raise as federal claims those claims that state courts have had the first opportunity to hear.

Exceptions exist in some cases in which state courts are inconsistent in following their own procedural rules or give courts great discretion to decide which cases to hear.  For example, the Sixth Circuit found in 2006 that the Ohio Supreme Court did not consistently abide by the deadline for raising claims of ineffective assistance of counsel imposed by Ohio App. R. 26(B) ("R. 26(B)").  *See discussion at Franklin v. Anderson*, 434 F.3d 412, 420-21 (6th Cir. 2006).  Similarly, the Sixth Circuit has found that R. 5(A) is not an adequate and independent ground upon which Ohio can rely to foreclose habeas review because it grants too much discretion to individual judges to be "firmly established and regularly followed."  *See discussion at Deitz v. Money*, 391 F.3d 804, 810-11 (6th Cir. 2004).  In cases in which a petitioner raises potentially meritorious claims which might otherwise be barred by the time limit imposed by R. 26(B) or might be raised via R. 5(A), a federal court may send the petitioner to the state courts to exhaust those claims because it cannot be sure that the state courts will reject the petitioner's attempt to use one of those

8

because no state remedies remain for any of those claims.  Black has clearly failed, however, *properly* to exhaust his state remedies for any of his exhausted claims.  A failure *properly* to exhaust state remedies is a procedural default.

Black raised two claims in the state courts that have not been procedurally exhausted.  In his motion to withdraw his guilty plea, he argued that his guilty plea had been improperly induced and that the state had violated his right to a speedy trial.  The latter claim is not before this court.  In arguing that his guilty plea had been improperly induced, Black argued both that the prosecution failed to abide by the plea agreement and that the prosecution induced his plea by a promise impossible of performance.  The latter claim is exhausted because it could have been raised on direct appeal or in Black's motion for a delayed appeal and is, therefore, barred by the doctrine of *res judicata*.[6]  In Ohio, "*res judicata* bars the further litigation of issues that were raised or could have been raised on direct appeal."  *State v. Dehler*, 73 Ohio St. 3d 307, 307, 652 N.E.2d 987, 987 (1995).

Black's claim that the prosecution failed to abide by the plea agreement, his third ground for relief, has arguably not been exhausted.  After Black raised this claim in his motion to withdraw his guilty plea, he failed timely to raise the claim in the state appellate

_____

remedies.  *See Rhines v. Weber*, 544 U.S. 269 (2005), for a discussion of when this is appropriate.

[6] The latter claim is also without merit.  The promise made by the prosecution was to recommend post-release control and drug treatment without imprisonment at the sentencing hearing.  As the discussion *infra* makes clear, a plea bargain is a contract, and that contract is interpreted under Ohio law according to its plain meaning. The prosecution did exactly what the plain meaning of its words promised:  It recommended post-release control and drug treatment without imprisonment at the sentencing hearing.  That the court did not accept the prosecution's recommendation because Black was wanted for a probation violation did not make the promise to make the recommendation impossible of performance.

court after the trial court overruled his motions.  Black alleges, however, that the trial court failed to send him notice of the its decision overruling his motion, which, if true, would constitute cause for his failure timely to file a notice of appeal.  That the trial court's docket does not show that a copy of the order overruling his motions was sent to Black supports his claim that he never received such notice.  Arguably, therefore, Black could file a motion pursuant to R. 5(A) to raise these claims in the state appellate court.

Nevertheless, the magistrate judge does not recommend that the court stay Black's exhausted claims and allow him to return to state court to exhaust his sole unexhausted claim because the claim is without merit.  A habeas court should not return plainly meritless claims for exhaustion.  *Rhines*, 544 U.S. at 277.  Respondent asserts in the Answer, and Black does not deny in the Traverse, that the promise was to recommend post-release control and drug treatment without imprisonment *at the original sentencing hearing.*[7]  "A plea bargain itself is contractual in nature and subject to contract-law standards."  *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986).  Under Ohio law "[w]here the parties following negotiation make mutual promises which thereafter are integrated into an unambiguous contract duly executed by them, courts will not give the contract a construction other than that which the plain language of the contract provides."  *Aultman Hosp.*, 46 Ohio St. 3d at 51, 544 N.E.2d at 921 (syllabus by the court); *see also Alexander v. Buckeye Pipeline Co.*, 53 Ohio St. 2d 241, 246, 374 N.E.2d 146, 150 (1978) ("[W]here the terms in an existing contract are clear and unambiguous, this court cannot in effect create a new contract by finding an intent not expressed in the clear language employed

---

[7]  The Traverse does not deny that this was the promise.  Rather, it argues that opposing that sentence at the resentencing hearing violated the agreement.

by the parties."). Likewise, "[c]ommon words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander*, 53 Ohio St. 2d at 241, 374 N.E.2d at 148 (paragraph two of the syllabus).  "It is not the responsibility or function of th[e] court to rewrite the parties' contract in order to provide for a more equitable result." *Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Auth.*, 78 Ohio St. 3d 353, 362, 678 N.E.2d 519, 526 (1997).  Black argues that the prosecution did not abide by the sentencing agreement because at a later resentencing hearing the prosecution objected to post-release control and drug treatment without imprisonment.  The prosecution did not promise, however, anything about what it would recommend to the court at any proceeding after the initial sentencing hearing.  Thus, the prosecution fulfilled the plain meaning of its promise under the contract.  There is no merit to the claim that the prosecution did not abide by the plea agreement.

Black contends that his failure to exhaust the claim that the prosecutor did not abide by the plea agreement should be excused because it would have been futile to raise the claim in the state courts.  He cites as support for this proposition *Turner v. Bagley*, 401 F.3d 718 (N.D. Ohio 2005).  But *Turner* is clearly distinguishable.  There, the state court had allowed the claim at issue to languish without decision.  For this reason the federal court excused the failure to exhaust.  In the instant case there is no indication that the state appellate court would have failed to give Black's claim prompt consideration.[8]  There is no merit, therefore, to Black's argument that his failure to exhaust his claim should be

---

[8] The trial court ruled on Black's motion to withdraw within about five months.

11

excused.

Black has failed to exhaust his third ground for relief that the prosecution did not abide by the plea agreement.  Respondent moves the court to stay these proceedings and allow Black to return to state court to exhaust this claim.  The magistrate judge recommends, however, that because the claim is without merit, the court should dismiss Black's third ground for relief pursuant to the discussion in *Rhines*.

As to respondent's argument that Black has other unexhausted claims, Black does not have, nor does respondent cite, any state remedies to which Black might turn that he is not barred from using by relevant state procedural rules or by application of the doctrine of *res judicata*.  As Black has no remaining state remedies for his claims, his claims have been exhausted.  Respondent's arguments to the contrary are without merit.

D.    *Procedural default*

Procedural default occurs when a petitioner fails to present fairly his constitutional claims to the highest state court in a federal constitutional context.  *Anderson*, 489 U.S. 4; *Picard*, 404 U.S. 270.  Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . .  not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Black has defaulted all his remaining grounds for relief.  He raised in the Ohio

12

Supreme Court his first two grounds for relief in his memorandum in support of jurisdiction.

He raised these claims, however, on appeal from the state appellate court's denial of his

motion for a delayed appeal.  Black did not raise any grounds for relief in that motion.[9]  In

his appeal filed on December 4, 2006 Black alleged violations of his right to effective

assistance of counsel and his right to a speedy trial.  The state appellate court dismissed

this appeal, however, as untimely filed.  Thus, Black failed fairly to raise any of his claims

in the state appellate court.  Under Ohio law a criminal constitutional question cannot

ordinarily be raised in the Ohio Supreme Court unless it is first presented in the court

below.  *State v. Jester*, 32 Ohio St. 3d, 147, 154, 512 N.E. 2d 962 (1987).  It is unlikely that

the Ohio Supreme Court would reach the merits of claims that were not properly raised in

the underlying appellate proceeding.  Where the state courts are silent as to the reasons

for denying a petitioner's claim, the Sixth Circuit has applied the presumption that the state

court "would not have ignored its own procedural rules and would have enforced the

procedural bar."  *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996).  This court must

assume, therefore, that the Ohio Supreme Court dismissed Black's appeal for failure to

---

[9] It is unclear whether Black believed that he filed one or two appeals in the state appellate court.  He filed a notice of appeal on December 4, 2006 and a notice of appeal on December 6, 2004.  In the former, he did not say that he was moving to file a delayed appeal, while in the latter he did so move.  In support of his motion for a delayed appeal, Black asserted that he had not previously filed an appeal pursuant to Ohio App. R. 4, the rule governing appeals of right, or pursuant to R. 5(A), the rule governing delayed appeals. Clearly, the state appellate court believed that Black had filed two appeals, as it handed down separate opinions in dismissing both.  Because Black filed two notices of appeal and only stated that he was filing a *delayed* appeal in the second notice, and because the state appeal court was, therefore, justified in treating his filings as inaugurating two separate appeals, this court must defer to the state court determination and regard Black as having made two separate appeals:  the first a claimed appeal of right and the second a motion for a delayed appeal.

13

follow Ohio's procedural rules.[10]  For this reason, Black has procedurally defaulted all his grounds for relief.

Nevertheless, procedural default is an affirmative defense that must be asserted by the state.  *See Gray*, 518 U.S. at 165-66.  The court may not *sua sponte* assume that respondent failed to raise the defense by inadvertence and consider its application in the absence of its assertion by respondent.  *Id.*

In describing the procedural status of Black's grounds for relief, respondent confused exhaustion and procedural default in terming Black's third, fourth, and fifth claims "unexhausted."  Despite using the incorrect terminology, respondent correctly noted that Black had failed *properly* to raise those claims in the Ohio courts, which is the gravamen of procedural default.  Respondent also correctly identified as procedural defaults the failure properly to raise in the Ohio courts the second subclaim of ground two (ineffectiveness of trial counsel for failure to file a notice of appeal) and the entirety of ground five.  This court should, therefore, regard respondent as having raised the defense of procedural default against all of Black's claims except his first ground for relief and the first subclaim of his second ground for relief (ineffective assistance of counsel for failing to object to denial of a speedy trial).  As respondent has failed to raise the defense against those claims, the court should not dismiss those claims as procedurally defaulted.

As already noted, Black has procedurally defaulted all the grounds for relief against which respondent raises procedural default as a defense.  He does not claim that cause

_____

[10]  The same result is reached if the interpretive rule handed down in *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991), is applied:  "[W]here . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits."

and prejudice or a manifest miscarriage of justice should excuse his defaults.  For this reason the magistrate judge recommends that the court dismiss the second subclaim of the second ground for relief (ineffective assistance of counsel for failure to file a notice of appeal) and the entirety of Black's third, fourth, and fifth grounds for relief as procedurally defaulted.

### III

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000). Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases."  *Id.* at 405.  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001).  If a court fails to identify the correct legal principal at issue, the "unreasonable application of" clause does not apply.  *Id.* at 730.

"[A] determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence."  *Id.*  The magistrate judge will consider Black's remaining grounds for relief under the deferential standard of review accorded the state court's determination of a prisoner's constitutional claims.

A.    *Ground one:  Whether petitioner was denied due process when the state appellate court refused to hear his delayed appeal*

Black argues in his first ground for relief that he was denied due process when the

16

state appellate court refused to consider his motion for a delayed appeal.  Respondent

answers that such a claim is not cognizable in habeas proceedings.  Respondent errs.

Federal courts generally do not grant habeas relief for alleged errors arising under

state law:

> "[F]ederal habeas corpus relief does not lie for errors of state law."  *Lewis v. Jeffers,*
> 497 U.S. 764 (1990);  see also *Pulley v. Harris,* 465 U.S. 37, 41 (1984). . . .  [I]t is
> not the province of a federal habeas court to reexamine state-court determinations
> on state-law questions.  In conducting habeas review, a federal court is limited to
> deciding whether a conviction violated the Constitution, laws, or treaties of the
> United States.

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  However, an error of state law may serve

as a basis for habeas relief when the petitioner was denied fundamental fairness in the trial

process.  *Id.*; *see also Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir.

1993).  An error of state law so severe as to deny fundamental fairness offends the due

process clauses of the Fifth and Fourteenth Amendments.  *See United States v. Agurs*, 427

U.S. 97, 107 (1976); *see also In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a

fair tribunal is a basic requirement of due process.").  Where appeals are concerned,

petitioner correctly argues, "While a state is not required by the federal constitution to

provide a mechanism of appeal for criminal defendants, a state that has elected to provide

a process of appellate review must do so consistent with the requirements of due process

and equal protection."  *Waldron v. Jackson*, 348 F.Supp. 2d 877, 889 (N.D. Ohio 2004)

(citing *Griffin v. People,* 351 U.S. 12, 18 (1956), and *Lopez v. Wilson,* 355 F.3d 931, 939

(6th Cir. 2004)).

That is as far as petitioner's argument goes, however.  In *Waldron* petitioner's

counsel had failed timely to file a notice of appeal, and the court found that under the

circumstances of that case this failure constituted ineffective assistance of counsel.  The court found, therefore, that the state appellate court's subsequent refusal to allow a delayed appeal despite counsel's earlier ineffective performance violated petitioner's due process rights.  What distinguishes this case from *Waldron* is that even if one assumes the performance of Black's counsel was objectively deficient, Black cannot demonstrate that he was prejudiced by the allegedly deficient performance.

The standard for determining whether petitioner's counsel was ineffective is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland v. Washington*, 466 U.S. 668, 686 (1984), and *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985) (applying the *Strickland* test to guilty pleas); *see also Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997).  A claim of ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687; *see also Groseclose*, 130 F.3d at 1167.

The first prong of this test, the showing of deficient performance, is an objective one: "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms."  *Strickland*, 466 U.S. 687-

18

88; *see also Groseclose*, 130 F.3d at 1167.  Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision.   *Strickland*, 466 U.S. at 689; *see also Groseclose*, 130 F.3d at 1167.  The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Groseclose*, 130 F.3d at 1167.  A court reviewing counsel's performance "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Strickland*, 466 U.S. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ."  *Id.* at 690-91 (1984); *see also Groseclose*, 130 F.3d at 1167-6.

The second prong of the test for ineffective assistance of counsel is whether the error prejudiced petitioner:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); *see also Groseclose*, 130 F.3d at 1168. Further "the burden rests on the accused to demonstrate a constitutional violation." *United States v. Cronic*, 466 U.S. 648, 658 (1984).  Showing a constitutional violation requires showing that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Nix v. Whiteside*, 475 U.S. 157, 175 (1986).  "Unreliability or unfairness does not

19

result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him."  *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  A reviewing court must ask itself "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695; *see also Groseclose*, 130 F.3d at 1168.

At the very least, Black has failed to show that he was prejudiced by counsel's allegedly ineffective performance.  That is, assuming for the moment that counsel's performance in not filing a notice of appeal fell short of an objective standard of reasonableness, Black has not shown that had counsel filed a notice of appeal his claims of error would have won relief in the state appellate court.  Black asserts in his first ground for relief that there was "strong evidence . . . that there has been a miscarriage of justice" in his case without specifying which alleged error would have won relief on appeal.  But as has already been shown, there is no merit to Black's contention that the prosecution failed to abide by the plea agreement or made a promise in the plea agreement that was impossible of performance.  As is shown *infra* at pp. 22-23, Black's claim that he was denied his right to a speedy trial is similarly without merit.

Finally, Black cannot show that he would have won relief had counsel timely raised his fifth ground for relief, that his sentencing violated the *ex post facto* clause.  In *Foster* the Ohio Supreme Court invalidated portions of Ohio's sentencing statute, Ohio Rev. Code § 2929.14 ("§ 2929.14").  In re-crafting the statute, the court eliminated a provision which required courts under certain circumstances to make judicial findings of fact before sentencing a defendant to a sentence greater than the shortest possible sentence for the committed crime.  Such judicial findings of fact were generally barred by *Blakely v.*

20

*Washington*, 542 U.S. 296 (2004).  Black committed the crime which is the basis for the conviction he is attacking before the decision in *Foster*, but he was sentenced after that decision was published  According to Black, because the sentencing court did not make any judicial findings of fact and did not sentence him to the shortest possible sentence, the court must have applied the sentencing law crafted in *Foster*.  This, Black concludes, violates the *ex post facto* clause and is constitutionally impermissible.

Black errs.  The sentencing court did take note of facts which would have justified a sentence longer than the minimum sentence, and those findings of fact were not the sort barred by *Blakely* or *Foster*.  At the time Black committed the theft offense, § 2929.14(B) read in relevant part as follows:

> (B) Except as provided in division (C), (D)(1), (D)(2), (D)(3), (D)(5), (D)(6), or (G)[11] of this section, in section 2907.02 of the Revised Code, or in Chapter 2925. of the Revised Code, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
>
> (1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term. . . .

Neither *Blakely* nor *Foster* prohibited a court from taking judicial notice that a defendant was serving or had served a prison term at the time of the offense.  *See Blakely*, 542 U.S. at 301; *Foster*, 109 Ohio St. 3d at 4-5, 845 N.E.2d at 478.  In sentencing Black the court took note of the fact that he had been convicted on 13 prior occasions and explicitly stated that it was sentencing him to an 11-month sentence because of his prior record.  Transcript of Sentencing Hearing, Answer, Exh. 6, pp. 3-4.  Thus, the court did not make

---

[11]  Sections 2929.14(D) & (G) were not applicable to Black's offense.

impermissible findings of fact in sentencing Black, and there are no grounds for concluding that the court applied the findings of *Foster ex post facto* to Black's crime.  For this reason Black cannot show that he would have been granted relief had he timely raised his claim that his sentencing violated the *ex post facto* clause.  The magistrate judge recommends, therefore, that the court overrule Black's first ground for relief.

In sum, even if one assumes that the performance of Black's attorney was constitutionally deficient in not timely filing a notice of appeal, Black cannot show that he was prejudiced by that allegedly deficient performance.  Black cannot, therefore, satisfy the second prong of the *Strickland* test.  For this reason, the magistrate judge recommends that the court overrule Black's first ground for relief.

B.    *Ground two:  Whether Black was denied effective assistance of counsel because trial counsel failed to object that Black had been denied his right to a speedy trial*

Black contends in the first part of his second ground for relief that he was denied effective assistance of trial counsel because counsel failed to object that Black had been denied his due process right to a speedy trial.  Respondent asserts that Black waived his right to make such an objection when he pleaded guilty.

Respondent is correct.[12]  "[A] defendant who pleads guilty may not raise challenges based on denial of due process rights to a speedy trial."  *United States v. Dossie*, 188 Fed. Appx. 339, 2006 WL 2034234, at *5   (6th Cir. June 17, 2006) (citing *United States v. Gonzalez-Arimont*, 268 F.3d 8, 11-12 (1st Cir. 2001); *United States v. Coffin*, 76 F.3d 494, 496 (2d Cir. 1996); *United States v. Bell*, 966 F.2d 914, 915 (5th Cir. 1992); *Tiemens v.*

---

[12]  While respondent is correct that a guilty plea waives violations of the right to a speedy trial, respondent did not bother to cite any statutory law or caselaw in support of that proposition.

*United States*, 724 F.2d 928, 929 (11th Cir. 1984)).  As Black waived his right to assert any alleged violation of his right to a speedy trial by pleading guilty, it would have made no difference if his attorney had objected to such a violation.

Black cannot show that was prejudiced by his trial counsel's alleged deficiencies. Black cannot, therefore, satisfy the second prong of the test in *Strickland*.  For this reason, the magistrate judge recommends that the court overrule Black's second ground for relief.

IV

For the reasons given above the magistrate judge recommends that the court deny Black's petition for a writ of habeas corpus.

Date:  September 18, 2007             /s/Patricia A. Hemann
                                     Patricia A. Hemann
                                     United States Magistrate Judge

OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See United States v. Walters, 638 F.2d 947 (6th Cir. 1981).  See also Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986)